OPINION.
{¶ 1} In this expedited appeal, considered pursuant to App.R. 11.12, the appellant, Randall Harris, challenges the order of the Hamilton County Juvenile Court adopting the decision of a magistrate that adjudicated Daisha and Jasmine Harris dependent children and committed them to the permanent custody of the Hamilton County Jobs and Family Services (HCJFS). In his three assignments of error, Harris challenges the adjudication and order of commitment as being based upon insufficient evidence, contrary to the weight of the evidence, and against the best interests of the children. For the following reasons, we affirm.
{¶ 2} Daisha and Jasmine Harris were originally removed from the custody of the appellant and their mother, Julia Fenos Mills, on August 14, 1997. At that time, HCJFS was concerned with Harris's alleged substance abuse and his indictment on the charge of corruption of a minor. (Harris had previous convictions for domestic violence, assault, and misdemeanor marijuana possession.) Custody of the children was returned to the couple, however, on August 13, 1998, following Harris's acquittal on the corruption charge and his successful completion of a program combining drug-and- alcohol counseling with random toxicology screening.
{¶ 3} Harris and Mills subsequently separated. Daisha and Jasmine went with Mills and her three other children, Christopher, Irene, and Richard. However, HCJFS assumed custody of all of Mills's children when she began living with a man with a history of sexual offenses. HCJFS then began a process of attempting to reunify Daisha and Jasmine with Harris. A brief period of reunification was interrupted when one of the Mills children accused Harris of sexual abuse. The allegation was recanted, however, and Harris, who had cooperated fully with authorities, was again given custody of his two daughters on April 3, 2000, under protective supervision by agency caseworkers.
{¶ 4} The family-preservation worker assigned to supervise Harris's care of his daughters became concerned regarding Harris's sobriety based upon several occasions on which she smelled alcohol on his person. Harris did not attend all of the toxicology screens arranged by HCJFS. Furthermore, the worker complained of Harris's failure to maintain contact with her. She was also concerned about the children's diet, their clothing and hygiene, and their discipline. The results of a toxicology screening on April 18, 2000, precipitated interim custody being granted to HCJFS on April 21, 2000. Afterward, Harris declined to attend a sexual-offender-assessment program and a parenting/psychological evaluation recommended by HCJFS. He sounded severely intoxicated when discussing his situation with a HCJFS caseworker on the telephone. Following the return of his children to agency care in April 2000, Harris declined to attend any programs or to comply with any toxicology screenings requested by HCJFS, and he did not provide any screenings or attend any programs on his own.
{¶ 5} Daisha and Jasmine were returned by HCJFS to the same foster home where they had resided previously. The magistrate found that both children had made "remarkable strides and improvement in their emotional, behavioral and educational functioning after their placement in substitute care."
{¶ 6} In his first assignment of error, Harris argues that the finding that his children were neglected and dependent was not supported by clear and convincing evidence. In making this argument, Harris solely addresses the evidence in his favor: that he had completed a number of negative toxicology screenings in the past; that he had been acquitted on the morals charge that went to trial; that there was no proof of any further sexual misbehavior with minors; and that, on one occasion, he was allowed to drive away after the police had administered field sobriety tests when the case worker called them from the day-care center where he had gone to pick up his daughters. Harris also emphasizes his continued interest in retaining custody of his children. Harris does not address, however, his failure to comply with all of the agency's toxicology screenings and his complete refusal to comply with toxicology screenings and agency-requested programs after his daughters were most recently removed from his custody. With respect to these failures, he offers only that he "grew weary of being at the beck and call of the agency." He simply dismisses as unproven the caseworkers' testimony concerning his insobriety, his failure to maintain contact, and the inadequacies of the care he provided for Daisha and Jasmine.
{¶ 7} Initially we note a procedural issue that neither party has addressed. The Ohio Supreme Court has held that "[a]n adjudication by a juvenile court that a child is `neglected' or `dependent' as defined in R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a `final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2501.02." In reMurray (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169, syllabus. The court reasoned that, for the purposes of former R.C. 2502.02, such orders affect a parent's substantial rights and determine the action notwithstanding the temporary nature of the custody award. Even such a temporary commitment, the court held, is determinative of the action, as it takes away the fundamental liberty interest of the parent in the custody and management of his or her child. Id. at 156,556 N.E.2d 1169.Although R.C. 2505.02 has since been amended, the revised version of subsection (B)(1) is substantially similar to that considered in Murray and thus leads to the same result. Accord In re Tamara (Mar. 21, 2002), 8th Dist. No. 79835.
{¶ 8} The holding in Murray is also consistent with R.C. 2501.02's express grant of jurisdiction to the court of appeals to review "the finding, order or judgment of a juvenile court that a child is delinquent, neglected or dependent * * * *. The court in Murray held that if the General Assembly had meant for this language to apply only to findings or orders resulting in permanent custody, the legislature would have manifested such intent. Murray at 159, 556 N.E.2d 1169.
{¶ 9} A party normally has thirty days within which to perfect an appeal from a final order. App.R. 4. Without a timely notice of appeal, an appellate court lacks jurisdiction to hear the appeal. The question arises, therefore, whether a parent who does not appeal an earlier adjudication of neglect and/or dependency with a grant of temporary custody to the agency waives the right to do so later when the disposition is changed to one of permanent custody. In Tamara, supra, the Eighth Appellate District held that a parent could not "bootstrap" the two orders — i.e., utilize the latter order granting the agency permanent custody to "indirectly and untimely" appeal a prior adjudication of neglect and dependency that, according to Murray, was final and appealable at the time it was entered. Since the parent in Tamara had not filed a notice of appeal from the neglect order, the Tamara court reasoned that it was without jurisdiction to review the assignments of error with respect to that order and dismissed them without discussion.
{¶ 10} We are persuaded that the result in Tamara is correct in light of the holding in Murray that an adjudication of neglect and/or dependency accompanied by a loss of custody, even temporary, constitutes a final and appealable order This is particularly illustrated where, as here, the magistrate considers the issue of neglect and dependency already decided when granting permanent custody to the agency. Indeed, if the grant of permanent custody in this case had been made upon motion, rather than complaint, R.C. 2151.414(A) provides that the prior adjudication of neglect and/or dependency could not have been readjudicated at the hearing.
{¶ 11} In the present case, the Harris children were last removed from Harris's custody on April 20, 2000, pursuant to an emergency order precipitated by the results of a toxicology screening on April 18, 2002. The children were subsequently adjudicated neglected and dependent on February 6, 2001, and have remained in the custody of the agency ever since. According to Murray, the entry of February 6, 2001, was a final and appealable order. Harris, however, did not appeal the adjudication of neglect and dependency. When the magistrate considered the complaint for permanent custody in her decision of October 3, 2001, she clearly did not revisit this issue, but only noted that the children had been previously adjudicated neglected and dependent on February 6, 2001. (The magistrate's decision was entitled "Decision of the Magistrate and Findings of Fact: Adjudicating the Children Dependent and Neglected on February 6, 2001, and Committing the Children to the Permanent Custody of the Hamilton County Job and Family Services on June 19, 2002.")
{¶ 12} By failing to file a timely notice of appeal from the February 6, 2001, order adjudicating Daisha and Jasmine neglected and dependent, Harris, in essence, has waived his first assignment of error under Murray as interpreted, we believe correctly, in Tamara. However, given the need for expediency in appeals of this sort, and considering the possibility that the Ohio Supreme Court may interpret Murray
differently, we proceed to discuss, alternatively, the merits of the assignment in an effort to waylay any further appeals.
{¶ 13} "Clear and convincing evidence is more than a mere preponderance of the evidence. Rather, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. See In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613, 620-621, citing Cross v.Ledgrod (1954), 161 Ohio St. 469, 120 N.E. 118, paragraph three of the syllabus. Once the clear-and-convincing standard has been met to the satisfaction of the juvenile court, a reviewing court `must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy the burden of proof.' In re Adoption of Holcomb,18 Ohio St.3d at 368, 481 N.E.2d at 621." In re Kinney (May 10, 2002), 1st Dist. No. C-020067.
{¶ 14} As statutorily defined, a neglected child includes one who "lacks adequate parental care because of the faults or habits of the child's parents, guardian or custodian," or whose parent, guardian or custodian "neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being." R.C.2151.03(2) and (3). A dependent child is one who "lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian," or "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. 2151.04((B) and (C).
{¶ 15} Having reviewed the record, we are convinced that it contains clear and convincing evidence to support the juvenile court's decision that Daisha and Jasmine were neglected and dependent. Harris further argues under this assignment of error that he was prejudiced by the magistrate's consideration of the welfare of his daughters along with the other Mills children. Having reviewed the record and the decision of the magistrate, we do not discern any prejudice from this procedure. Contrary to Harris's assertion, we believe that the magistrate's discussion adequately segregated the evidence and findings pertaining to the two sets of children.
{¶ 16} In his second assignment of error, Harris argues that the magistrate's finding that permanent commitment was in the best interests of the children was contrary to the manifest weight of the evidence. Harris again relies on the evidence in his favor and ignores the evidence that was not. It is well settled that a judgment supported by some competent, credible evidence going to all the essential elements of the case or defense will not be reversed by a reviewing court as being against the manifest weight of the evidence. See Myers v. Garson (1993),66 Ohio St.3d 610, 614 N.E.2d 742; see, also, C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. It is also firmly established that in reviewing the weight of the evidence an appellate court is necessarily bound by the credibility determinations made by the trial court as the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
{¶ 17} The magistrate found specifically that Harris had failed repeatedly and continuously to remedy the conditions that had resulted in the children being placed outside his home. R.C. 2151.414(E)(1). In this regard, the magistrate determined that Harris had "refused to participate in chemical dependency treatment/screens, a sexual offender assessment, and an updated psychological evaluation." There was clearly evidence to support this determination. Indeed, Harris does not contest that he "grew weary" of the screening and programs and simply stopped participating. Further, the magistrate found that Harris had demonstrated a lack of commitment to his children by his refusal to address his substance-abuse problems and the deficits in his parenting skills. R.C. 2151.414(E)(4). Again, there is competent evidence in the record to support this finding. The magistrate found as well that Harris's chemical dependency was so severe that it made him unable to provide an adequate permanent home, both at the time of the dispositional hearing and as anticipated within one year after the hearing. R.C. 2151.414(E)(2). In support of this finding, the magistrate recited the evidence of Harris's continued substance abuse and his withdrawal from all further toxicology screens and chemical-dependency treatment.
{¶ 18} Further, the magistrate found that permanent custody was in the best interests of the children, noting that "[t]he only time the children's needs are met, and the only time they appear to thrive, is when they are residing outside the care of their parents or the former legal custodian." See R.C. 2151.414(D)(3). The magistrate further observed that the guardian ad litem for the girls had recommended an award of permanent custody to HCJFS, and that there was no evidence that the any of the children involved had expressed any preference for living with either of their parents.
{¶ 19} Harris argues that the trial court completely failed to address the relationship between him and his daughters. By this he means that the trial court should have given greater weight to his attempts to keep the children in his home, his "faithful visitations," and his attempts to "rectify his shortcomings" before he decided that he was tired of working with the agency. We read the magistrate's decision, however, as simply giving greater weight to the evidence of his continued substance abuse, his withdrawal from all screening and programs, the deficits in his parenting skills, the lack of any expression of desire by his daughters to remain with their father, and the marked improvement that the children demonstrated in a foster environment. We also disagree with Harris that the magistrate did not adequately consider options other than a grant of permanent custody.
Harris's second assignment of error is overruled.
{¶ 20} In his third assignment of error, Harris argues that the evidence was insufficient to support a decision that the children could not be placed with him, either at the time of the hearing or within a reasonable time. Again, Harris argues that the trial court ignored evidence of earlier negative toxicology screenings, completed outpatient and relapse- prevention programs, and completed parenting-education programs. We do not dispute that these were all factors in his favor. The fact is, however, that he voluntarily withdrew from such programs, having grown "weary" of them, and there was ample evidence presented that he had relapsed. Given his history of substance abuse and his disinclination to address the problem, there was clearly sufficient evidence for the trial court to conclude that the children could not be placed with Harris, and that they would not be able to be placed with him within a reasonable period of time.
{¶ 21} Harris's third assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
PAINTER, P.J., and SUNDERMANN, J., concur.